The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the Fourth Circuit this morning. We have interesting cases and good lawyers. We're looking forward to hearing from you. In the first case, Truck Insurance Exchange v. Kaiser Gypsum et al., Mr. Kazaza? Yes, sir. I hope I didn't butcher your name. I apologize if I did, but it's good to have you with us, sir. Thank you, Your Honor. You represent Truck? Yes, sir. Good morning, Your Honors, and may it please the Court. As the Supreme Court observed, Kaiser's plan would have Truck stand alone in carrying the financial burden of Kaiser's asbestos debt, so Truck is entitled to be heard on the merits. On those merits, Kaiser's plan falls short in two independent grounds. Well, let me ask you two factual questions first, because I wasn't quite sure from the record. So Truck's liability per claimant would be $500,000. That's right, Your Honor. And there's a $5,000 deductible. So if a claimant recovers, do they get $500,000 or $505,000? If a claimant recovers, they would get the amount of their recovery. $500,000 would come from Truck. They can then bring the deductible only after the claim is fully resolved against Truck to the trust for the payment of their deductible. For the overwhelming majority of claims, that is $5,000. There's, I believe, one or two claim years with a slightly higher deductible. And if a claimant in a future case, say in a state court, got a verdict for a million, would they then get the remaining $495,000 from the trust? There are excess insurers who have an agreement amongst themselves. And I believe that additional payment would come from the excess coverage rather than from the trust. And all those excess insurers signed off on the Chapter 11 plan? Because of the unusual nature of Truck. Did they or did they not? They did, Your Honor, yes. All right. Okay. So the trust, there's no, under this plan, if there's a verdict for a settlement over $500,000, the amount over Truck's insurance liability doesn't, would not be a claim that is made to the trust and administered with other claims. Is that right? Yes, that's right, Your Honor. I'm sorry. Go ahead. I didn't mean to cut you off. The lawsuit is filed against the reorganized debtor nominally only. The claimant is prohibited from bringing the claim to the trust. And only after they have a judgment, they bring proof of that judgment to the trust for payment of their deductible. Okay. Switching gears actually a little bit to a punitive damages award. Yes, Your Honor. Would that, would a client, if an award of punitive damages is issued, would recovery for that be brought in the, to the trust? No, it would not. The plan disallows punitive damages awards, so they're just wiped out. Those are not insured under Truck's policies. You cannot recover a punitive damage award. And as to the trust's liability, the plan specifically provides that punitive damages are not recoverable. So there is no punitive damage possibility going forward? Post-confirmation. That's correct. Post-confirmation. So would it be possible if the excess insurance for a recovery over half a million, if that also, and this is just for compensable, also exceeded the excess insurance limits, would that overage be a possible claim against the trust? I'm not entirely certain, Your Honor, but that's a vanishingly small slice of recoveries. Most recoveries are within the range of Truck's coverage. Right. I understand that, but it would seem to be of some importance if that potential for recovery is there. And my understanding is that the trust covers the deductible and does not, it is not consolidated that the trust would pay.  I'll ask opposing counsel the same thing. The plan is not proposed in good faith because it makes no provision. Counsel, I'm sorry. We really want to hear those grounds, but I have another preliminary question, if you don't mind. I'm trying to make sure I understand your position on what the Supreme Court said and what we're to do with it before we consider those two merits points. Is it your position that the Supreme Court resolved Article III standing? So, Article III standing and appellate standing were raised to the Supreme Court. Appellate standing at the brief and opposition stage. Article III standing in the claimant's response brief before the court. The court ruled that Truck is a party in interest entitled to be heard. It would be quite strange for them to have issued that ruling without at least implicitly saying that Article III standing was satisfied because that would have undermined the court's jurisdiction. As to Article III standing specifically, the debtor is the one seeking relief from the bankruptcy and the district courts. So, Article III requires them to establish standing. I'm sorry to cut you off again, but I hear you. I think I understand where you're going there. So, just kind of step by step, the Supreme Court didn't specifically address Article III standing. Do you agree with that? It did not specifically address it, but its reasoning as to party in interest is inconsistent with my friend's on the other side's position that we lack Article III standing because the Supreme Court acknowledged that we may be directly I'm sorry. The court impliedly ruled on Article III standing? Yes, I think that what the court held as to party in interest precludes a conclusion that we lack Article III standing. But that's a different, it seems to me you're saying two different things there. One way, and I think what y'all may have argued at the Supreme Court, and I can't recall if you did the last time we had the case, was that your status in party in interest created Article III standing. I thought that was a position that Truck advanced before and argued to the Supreme Court. Just a second ago, you said something different, and I'm not trying to beat you up on this, I just want to make sure I understand if it's a different argument, which is that the standing obligation isn't yours to establish. You're a respondent, and therefore to consider standing, we look to Kaiser and its claim rather than to Truck and its objection. So those are two different issues. It sounds like you're now going with the latter, if I'm understanding you right. They are distinct issues. We are advancing both. Kaiser has the obligation to establish Article III standing to seek reorganization, but we also are directly and adversely affected by the terms of the plan that Kaiser obtained from the district court. So as the Supreme Court said as to 1109B, party in interest, that has a direct financial impact on us, and that is sufficient even if we have the obligation to establish Article III standing to show that we have that showing here. Both as to good faith and as to the 524G factors, because satisfying the 524G factors is a necessary precondition to the channeling injunction that protects the excess insurers, protects the parent company, and protects the reorganized debtors, and does not protect us. If you have – well, I'll hold off and let you get to the merits, because I may have some follow-up once you address that. So thank you. The plan is not proposed in good faith because it makes no effort to address the possibility of fraud created by legacy bankruptcy trusts. This is a problem that exists because of the terms of previously confirmed Section 524G plans. Those terms allow for claimants to submit claims outside the ordinary statute of limitations, and they require the 524G trust to treat claims as confidential settlement information and to resist subpoenas to discover. Well, if there had been no bankruptcy and a case was proceeding in state or federal court, the protections that you argue are an indicator of bad faith would not have been present for a truck anyway. There's a distinction between saying that it is specifically a showing of bad faith and that good faith – Right. So my question goes to, if there were no bankruptcy, the protections you're arguing now wouldn't exist either, unless that state or federal court gave them to you. The protections would not exist, but Kaiser has come before the district court requesting a reorganization under the terms of Section 524G, and what has to be answered here is what the district court has to do under the code in order to approve a plan proposed in good faith. Now, as the United States has argued in the Merrimont case, in SEPCO, and in the bankruptcy court here, a 524G plan that does not include the simple fraud prevention measures that are necessary to exist with existing asbestos trusts is not a plan that's proposed in good faith. So, in those cases, counsel, I can't recall this, so this is just a factual question on those cases. Was the issue there whether there was fraud disclosures or fraud protection measures for claims that were part of the trust, or was it like this, where there were fraud measures for the trust, but none for claims that are pursued? So I'm trying to see how – if it's a case on all fours, or they're talking about claims that are administered by the trust. The two-track proposal that Kaiser's plan has is something novel. We're not aware of any other plan that prohibits insured claims from being brought against the trust. Right. So in these other plans, the claim is initially brought against the trust. And to be clear, under all of these plans, including Kaiser's, a jury trial is always available as a last option, even with trust claims. So the question is, why does Kaiser's plan have this two-track provision, and it's specifically to exempt insured claims from the protections of the simple fraud prevention measures that are now standard in 524G plans, except here as to insured claims? And your position is – I want to – I'm trying to – is that – Is your position that you can't get that same information in discovery, be it in state or federal court, or is your claim that even if I can, you should have to do it anyway? It cannot be obtained through state court discovery, mostly because of the extended limitations period restriction. So in state court proceeding, even if TRUC went to existing bankruptcy trusts and requested claims information from them, a claim would not necessarily have been filed before Kaiser's claim resolved. And the record here shows that that's the case. TRUC's expert examined 205 claims from Kaiser's database, pre-bankruptcy Kaiser claims, and found that of those claimants, they had – of those 205 claimants, they had omitted 63% of the claims they filed against existing trusts. But you could – you could – TRUC's counsel in a state or federal court asbestos claim could certainly seek discovery from the claimant about prior employment, prior claims, and things like that, right? They could seek discovery from the claimant, but what the expert evidence here shows is that the claimants were withholding that information. So claimants are misrepresenting facts in discovery? Is that what you're saying? That's right, Your Honor. That's what the expert report here at 5218 of the JA shows. Okay. And the district court rejected that? The district court concluded that claims that were being pursued in tort were not within its province at the JA 1587, so it had a legal misunderstanding as to its obligation toward those claims. Both the claims that are insured and will be brought in tort against TRUC and the claims that are uninsured and will be brought directly to the trust are all bankruptcy claims within the jurisdiction. But that's not all it said. It certainly said that, and I think you understand that point. I'm going to ask your, you know, colleague about that. But didn't it also say there was not, as a matter of fact, evidence of the type of fraud you're saying could exist? It made a statement that the showing of fact of fraud was speculative, but that in itself is inconsistent with what the district court did here, which was to require these fraud prevention measures for uninsured claims, which have the same exact risk and potential of fraud as the insured claims. But those are presented to the trust. Those are presented to the trust, but 524G requires that the trust assume all of the debtor's liabilities. So in the other cases that you had cited previously, all of the claims were made to the trust initially, is that right? Yes, they're all made to the trust initially. All right, so here they're bifurcated, and the majority of the claims are then going to be brought in an independent state or federal court. What's the authority of the bankruptcy court to dictate the discovery procedures in those courts? Well, to be clear, we're not dictating discovery procedures. State court discovery would proceed exactly as it would under existing state court laws. All that we are asking for is that prior to filing that... Right, but you're asking the bankruptcy court to tell these other courts, which are not bankruptcy courts, that you began the litigation and you're going to have this information. We are not issuing any directive to state courts. We are asking that the channeling injunction that governs claims in the future require a claimant to sign that simple release that authorizes information sharing from existing federal bankruptcy trusts and provide claims information that can be audited. You can't ask for that in the state or federal court? We can't require that in state court. State court procedures do not authorize us to require that release. That's why 524G plans include them. It's why the United States has repeatedly argued in Marymount, SEPCO, and here that they're necessary for a plan to be proposed. So go back for a minute. If you brought a case, whether it's in Virginia or Montana, you're representing to this court that those states uniformly bar that type of question? We could ask for the information from the claimant, but we cannot require the claimant to provide the release or the audit that allow us to go to existing bankruptcy trusts and have them release the information to us without treating it as confidential settlement information, which would require us to individually litigate a motion to compel against each of 60 existing 524G trusts in an action brought ordinarily in Delaware that cannot be brought under state court law because the state court overhearing the tort claim does not have jurisdiction over the federal bankruptcy trust. Have you litigated that in the course of this? Has there been litigation with trust over the information you're seeking? The trust litigation would be futile because of the limitation period extension. Well, let me just ask the question. Have you yet attempted in a case that's proceeded outside of the trust here in a state or federal court case to go obtain that information from another trust? Has that effort been undertaken? I'm not aware that it's been undertaken in tort litigation. Our experts here showed what was happening in those cases. But why wouldn't that matter? I mean, it sounds like you're saying I have this. I mean, I know why you would want it would be better for you if you got it on the front end. That would be simpler and cheaper and much easier, and maybe there's a good reason they're not giving it. I'm going to follow up with that. But it seems like I get your point. You can ask to claim it, and they have a duty to be honest, and maybe some are and maybe some aren't, and that's an issue. But you also have the legal process to go to these other trusts. And I just wonder, as a practical matter, are they even resisting? I mean, it seems like you haven't even tried. They have an obligation under the terms of their trust procedures to resist. They are required to resist discovery demands. So they have a legal obligation to resist. Does this one have a legal obligation to resist? This one also has the requirement to treat claims information as confidential settlement information. Even for situations like this when there is, you know, demands from discovery in other cases, that's by the trust terms not discoverable? They would resist discovery in the same way. Have you seen that happen? Has that happened when people have sought discovery? An asbestos claimant is suing someone and says, I want recovery from asbestos, and discovery has been attempted from a trust. Has a trust objected? I can't cite a case to you where that has happened, Your Honor, but that's a big deal. I mean, that's the whole nub of this, isn't it? And it seems like you're saying they can't do it or won't do it, and we've got all these cases that are out there and no one's tried it. So we're talking about stuff that you may be entirely right on, and I get your point that the trust provisions are there, but it seems kind of odd that you've been up to the Supreme Court, you've been here about something that we don't even know the answer to. The expert, the second expert report we submitted, Professor Brinkman's report, covers how these claims are not discoverable from existing trusts. So that's at JA 5270 and the surrounding pages. But you're talking about an expert. I mean, you know litigation. I know litigation. I mean, I don't need an expert to tell me how discovery works. You file a third-party subpoena and you litigate it. And what happens is what the judge says happens. And we're all, it seems like, guessing about what the judge is going to do when you actually do the thing that you say is going to be hard but you haven't done yet. There would be nothing to discover in most cases, Your Honor. But the objections could be sustained or overruled. I'm sorry, Your Honor. The objections could be sustained or the objection could be overruled. Because of the extended limitations period that trusts provide for, a claimant can wait until its claim against truck in the tort system has been completely resolved and paid before they submit a claim with a bankruptcy trust. So even if we sought discovery from the bankruptcy trust and obtained that order, the trust would simply tell us we have no claim.  So I hear that point. If you did all that, there's a possibility that they were sitting on their hands strategically and you wouldn't get it anyway, right? That's one of your arguments. That's correct. I understand that one. Is your argument, I'm trying to get to the nub of all this. Is it all about these disclosures that you want or do you have, I mean, if right now the other side agreed to provide these disclosures as part of the channeling injunction, would you be happy? That is the core of our objection.  So you're not, you don't have a fundamental structural objection to the two-tiered system as you refer to it if you were to get the disclosure information. That's correct, Your Honor. We would be happy to defend in tort. If the plan and the channeling injunction first required claimants to come and provide this release and audit authorization prior to commencing their action. Because some of your objections, you know, seem to talk about things like there's, you know, financial viability of this defendant to pay a lot of the uninsured claims. You know, your policy doesn't exhaust so we really don't have this, you know, limited pie like we're talking about. And I couldn't tell if you were objecting basically to this whole bankruptcy itself as not being valid or if it was just about the disclosures. And it sounds like this is all about the disclosures. It is the most about the disclosures. We think that the two are connected in that many of the 524G shortcomings of the plan are there so that the plan can nominally comply with 524G while shifting off onto truck the responsibility for any fraud that may exist. And the bankruptcy court itself observed that when it said that there was an appearance that the plan nominally satisfied Section 524G but that certain requirements, particularly control and funding, looked pretextual and that it looks like all you're trying to do is check the box on this part of 524G. That's at 3640 of the JA. But that really gets to whether, I mean, and that's a pretty interesting question that, you know, this bankruptcy and this doesn't, it's not precisely framed here but it's framed in some other, you know, bankruptcy proceedings involving debtors which is if there's some sort of like basic level of financial distress that's needed. But you're not making that objection specifically here. We're not. And we think a 524G plan could be confirmed here that complies with the 524G requirements and with the requirement of good faith. We think that it would be necessary for that plan to provide these simple fraud prevention measures which are now standard to all claims whether insured or uninsured. And if it did, you say you would be happy despite the challenges you make to certain components of the 524G that don't have anything to do with that. We may not press those objections. We would note that the bankruptcy court has an obligation under Espinoza to ensure that the requirements of the code are complied with. It's not enough to confirm the plan, simply that the parties agree to the plan.  But our primary objective is to receive the protection of the fraud prevention measures. Yes, Your Honor. So let's just assume for purposes of argument that we determine that you're correct. They've got to have these disclosure requirements as part of the plan universally. Then what happens? There would be a remand, Your Honor. We would have a proceeding before the district court to amend the plan and the channeling injunction to require that. We believe that what happened in Merrimont indicates that... So you think you could do that even though the code requires the claimants to vote and approve on a plan and they would not have voted to approve that. Well, Merrimont is indicative here because in Merrimont, the bankruptcy court raised concerns about this exact same pattern of fraud and said, I'm not going to be comfortable confirming a plan that does not have these fraud prevention measures. At that point, the plan vote had already taken place, and the parties agreed to adopt these fraud prevention measures and put them into the confirmed plan without having a re-vote by the claimants. So here, the claimants have said they would not vote for that. But in other cases, asbestos claimants have readily agreed to that, and these asbestos claimants are largely the same group of people because they have so many claims against so many different potential exposures. So if these fraud prevention measures are acceptable in the Garlack plan, the Tsepko plan, the Merrimont plan, and others, I find it hard to see why they would be utterly unacceptable in Kaiser's plan. But there may be reasons because those are different, and if they don't get it through the plan, they don't get it at all. And at least the argument is here, you get it outside of the plan. You've told us the limitations of that, and I'm not trying to repeat that argument. I'd really like to follow up on Judge Agee's question to kind of understand what happens if you were to prevail. I grant that there would be a remand. Is it your position that there would need to be some sort of plan proposed that has that, and people could vote on it or not vote for it? Well, as to the fraud prevention measures specifically, those can be adopted by amendment on remand without necessitating a revote. If a revote is necessary. So, you're saying if we say those provisions have to be provided, the prior vote counts? In other words, people who voted yes on something would be deemed to have voted yes on something else? Well, 524G itself is indicative here because it puts restrictions on how the injunction. You didn't mention that you had a follow-on question. Yes, it can be modified without a revote. And 524G itself suggests that that's the case because it puts. That sounds sort of like a new take on the bankruptcy concept of Cramdale. Well, I don't think you would have objecting creditors here. For one, all of the unsecured creditors outside of asbestos payments have been paid in full, accepted the plan. The environmental claimants settled and have been paid in full. So, this would only be about the asbestos claimants who are the only people who would be potentially affected. In other words, you have one of these 524G trusts, isn't it? I'm sorry, Your Honor? Isn't that why you have one of these 524G trusts? It is. And it's why the amendment here can take place without implicating mootness or any of the other concerns that usually arise in a bankruptcy appeal. Because this is purely about forward-looking procedures. No clawback of payments will be required. No creditors will have to pay back money and pay it out to anyone else. This is only about the procedures that will govern asbestos claims that are resolved in the future against truck. What's the authority for that? Why would it not? Why would there not be any clawback? Well, all of the non-asbestos claimants have been paid in full, and none of our arguments would address how. I'm talking about asbestos. Presumably, or I don't know this, but I'm presuming during this whole time there's been cases that are in state and federal court that have proceeded. And since all this appellate litigation has happened, are there not bankruptcy cases that have either gone to verdict or settled? There are a few hundred that have been resolved, but the... Has there been a stay in effect or anything? So, the bankruptcy court lifted the stay in order to allow the tort litigation to continue against truck. Did you say there's been a few hundred? Yes, there have been a few hundred that have been... What's a few hundred? The trust's report, I believe the 2023 report, indicates that there have been... It's a few hundred. I can come back with the figure for you, Your Honor. So, have they been... Well, wait a minute. Have the claimants in those cases been paid? Yes, Your Honor. And so, you paid them. We would not seek any repayment from those claimants. We are purely seeking... Your client has paid them, correct? We have paid them. The trust has paid deductibles to the extent deductibles were owed. But is that... I'm just thinking... So, it sounds like for those cases, you're stating, and I appreciate your comment, that your client would not seek any relief going backwards. But, you know, interestingly, the plaintiffs might have settled a case knowing they couldn't get punitive damages for an amount lower than they would have settled were this not in place. So, they may have been harmed, right? Even... For one thing, that would have no impact on Truck because our insurance does not cover punitive damages. Yeah. But the number of punitive damages claims in the more than 30,000 asbestos claims against Kaiser Resolve prior to the bankruptcy was four. And one of those, only in one, were punitive damages paid for an amount higher than compensatory damages. The others were either remitted punitive damages awards or settled. It was a $4 million claim? It was the $4 million award, yes. I believe that was the one punitive damages award. Which was a remitted or from a $20 million award. I'm sorry, Jessica. Go ahead. Well, so it sounds like your answer there is that you don't think punitive damages is a meaningful part of this whole situation. That if there's, I mean, a few hundred, maybe that doesn't sound like a lot to you. My reaction is that's a good many. And just, you know, odds seem to be that, and I don't know if they're good punitive damages claims or not, you seem to be suggesting there haven't been that many. I mean, I guess my point, though, I mean, it's at least theoretically possible, wouldn't you agree, that if punitive damages were off the table by virtue of this plan, that affects settlement negotiations to the extent a claimant thought they were a viable part of its claim. That is a possibility, Your Honor, but the equitable mootness inquiry asks whether the court can fashion relief that would address the objection on a forward-going basis. You're just saying, I'm sorry to cut you off, but we've asked so many questions your way over, and I've monopolized a lot of time, so it sounds like you're saying even if that's true, there are not that many claims historically, and the abilities of the bankruptcy code allow you to do a going-forward resolution without looking back. Yes, and I would also point to, that's correct, Your Honor, the requirement of 524G that the plan be necessary to reduce inequitable outcomes between claimants and future demands. My friends have pointed to the possibility of punitive damages in order to satisfy that, but given how small punitive damages are as a proportion of the claims prior to that, we don't think that that's tenable, but the 524G plan with fraud prevention measures here would be necessary to address the inequity between honest claimants and claimants who withhold claims information. So this plan can be confirmed under 524G if it provides for fraud prevention measures. Isn't punitive damages the only aspect of asbestos claims that's affected by this bankruptcy? It seems to me, at least for the period of your insurance, your insurance is intact and won't exhaust. If there's a claim of compensatory damages over $500,000, there's excess coverage, you've said. So we don't have any, the trust is paying the deductible, so we don't have any gap, any shortfall in recovery for any compensatory damages. And it seems like the only thing left is punitive damages, and they go away under this. It seems like that's the only thing that is really materially affected by the way this bankruptcy and trust is set up. Well, the other material effect is that the plan entirely excuses Kaiser and its parent company from playing a role in defending these claims. Previously, although we had an insurance obligation, we were confident that they had a stake in these cases. They were next to us at the defense table in these cases. Now they're protected by the channeling injunction and the discharge, so Truck is left standing alone with the responsibility for these claims. What does that mean, that they're not, you know, I mean that makes it sound like you had financial responsibility initially, so that makes it sound like, you know, you needed them there for some sort of assistance, and you do have a contractual right to that sort of assistance. We do. So that, not being at the table, to the extent not being at the table means not cooperating, you have a right to enforce that. You could enforce your contractual right there. Yes, but what we're seeking here would not reduce compensatory damages, of course. We're not looking to require asbestos claimants to take a haircut on their claims. We're just asking that the claims be resolved on an honest basis. I got that, but I'm back to my question about what does this bankruptcy do to these claims, and I understand your fraud claim. I'm not trying to minimize that, but big picture, it seems like the only thing this bankruptcy does in terms of affecting asbestos claims is extinguish punitive damages. Yes, Your Honor, it extinguishes punitive damages. And this is a whole lot of trouble to extinguish punitive damages if they're a non-issue. Well, it also allows Kaiser's parent company to But you answered yes to his question. That was the only thing. It also, I would add, Only thing. I would add, Your Honor, that it allows You're adding to it, so you're changing your answer. Yes, Your Honor, I am adding to it that it allows Kaiser's parent company to leave the bankruptcy with its ownership fully reinstated of the two debtors. That's a company that's around $180 million in valuation, and it now knows that that company is forever protected from asbestos claims. Whether truck insurance continues or not, whether we lose the ability to pay claims or not, Kaiser and Lehigh Hansen now have the protection of the discharge and the injunction, and they have fully reinstated their ownership of the debtors. But preserving ongoing concerns is one of the major requirements of good faith, isn't it? It is, and 524G is set up so that the ongoing concern has a stake in the success of the asbestos trust, which is why the control requirement exists, so that if there is a problem with recoveries, the trust can gain control over the debtor. That's not a realistic possibility here, because the only control element is a contingency on the $1 million note. That note is a protectable control. It's the same kind of control that the Ninth Circuit rejected in the plant insulation case, because it doesn't provide a realistic prospect of control, and the control that would obtain is of a company that is necessarily worthless. The $1 million note is vastly oversecured. The company is worth about $180 million. So if a $1 million note is going to be sufficient to gain control of half of the company, the company would have had to become worthless at that point, which is the type of control that the Ninth Circuit rejected in plant insulation. Thank you, runners. Thank you. Mr. Marshall? Good morning, Judge King. May it please the Court. I'm Kevin Marshall, representing the debtors. Let me ask you the same question I ask opposing counsel. If we assume, just for argument, that there's a state or federal proceeding for one of these claimants, and they pick a number, a $10 million recovery. So truck and the trust pay $505,000. Excess insurance kicks in, but for whatever reason, it caps out at $5 million. So there's still $5 million of the judgment unpaid. What happens to that? The excess insurers would pay that. There's an absolute commitment from the excess insurers to pay any amount? My understanding is that the excess insurance goes up to $20 million. All right. Let's say there's a $25 million recovery. What happens to the extra $5 million? The liability would technically belong to the trust, but it wouldn't be possible to collect that from the trust because of the discharge and the channeling injunction. So the trust would owe the deductible. The truck would pay up to the cap. The excess insurers would pay up to whatever limit they have. The presence of the excess insurers is among the reasons why my friend is inaccurate in saying the truck stands alone. These excess insurers are on the hook for anything over $500,000, and none of them objected to this plan. Would Judge Agee's question and your answers be the same, except for insurance coverage on punitive damages? I mean, if there's a punitive damages award, that's discharged and not something that can be solved through the trust? Yes, is the short answer. The punitive damage cannot be collected, including not being collected from the trust. And, Judge Claudelum, I think your question at the end, to my colleague, is very helpful. The main change here is that punitive damages are eliminated. That's actually a benefit to truck in terms of the incentives in litigating. But it also shows that nothing else is changing. So, as this court said in its last opinion, the truck, this plan in no way alters truck rights or obligations. And the Supreme Court's decision did not alter that conclusion. So, among other things, that means that the plan simply leaves truck in the same place as it was before the bankruptcy. And that includes defending litigation just as before, including the same alleged fraud in the tort system. I'm sorry. Go ahead, counsel. I'm sorry. And so, truck's argument first depends on whether they should get a windfall, a benefit compared to where they were before. But it also, as some of your questions were getting at, depends on perjury in the state court system. And that the fact is a factual question on which both lower courts disagreed with truck. This is a factual clarification. There could be cases that are removed from state court to federal court, or is that not an option? There could be some cases in federal court. There's diversity jurisdiction or something, so there's no barrier on a federal court handling one of these tort cases. There's no barrier. Most of the litigation is in state court. Some of it's in federal court. Occasionally. Occasionally. My understanding is nearly all of it is in state court. And so, the question is, can the bankruptcy court tell the state court... In other words, all over the country. Yes. But you started to answer a question, and you started to say the question is, can the bankruptcy court tell the state courts what to do? Why is that the question? I understand truck's position to be not that the bankruptcy court needs to say anything to state courts or federal courts handling cases. They're just saying, this is a bankruptcy case, and you have bankruptcy claims that are insured. And the plan says they're going to be, the state's going to be lifted, and you can litigate those outside in whatever court is appropriate. Why couldn't the plan say any claimant, whether it's litigated, you know, it resolved in the trust or litigated outside the trust, provide those disclosures? That's not saying what state courts have to do. That's just saying what you have to do as part of this bankruptcy process. Well, Judge Pottenbaum, your question gets at something that was very curious about my colleague's argument. We've been asking all along, what is the authority, if any, to impose these kind of requirements? And we've never had an answer. But today, the answer apparently is, it can be part of the channeling injunction under Section 524G. What that means is that truck is essentially seeking a third-party relief under 524G. 524G, unlike, say, your normal situation. Third-party relief, what do you mean? They're seeking a channeling injunction for their benefit. Third-party relief is maybe not the best phrase. But under 524G, an insurer gets the benefit of a channeling injunction when it contributes to the trust, when it helps to fund the trust. And here, the whole point is truck is not doing that. So there's no basis under 524G. So would it be fair to say that your point is, as to opposing counsel's argument, is that it would be, in essence, a required condition precedent to bringing a claim in state or federal court that they have gone, that the claimant would have made these disclosures in this case, in the bankruptcy court. And they would have to satisfy that condition before they could file suit. That is one way to think about what they're doing. And there's no authority for that. Why isn't there authority for that? I mean, it's never been done before. A useful analogy might be the way a lift day motion works. Let me just, I want you to answer that question. But what you're talking about, this whole system is relatively new. Maybe it seems that way. We don't have a court of appeals talking about it. It seems like we're dealing, I mean, I've heard of these things throughout my career, and I always thought they were when you had a finite sum of money, and all the claims were handled through the trust so that you could make, deal with the prospect of an exhaustible sum of money. Now, I'm not saying that's the only way you can do it. Obviously, y'all are proposing a different way here. And it sounds like that's been done at least in some, there's some lower court decisions, and maybe that's going on in other places. I'm just trying to see why, what in the bankruptcy code, what's wrong with one of the claimants answering some basic information about fraud protection? I mean, why are you fighting that? I think the question, especially after Purdue Pharma, the question is what authorizes that? That is a type of injunction for the benefit of truck. What is the authority for that? And truck hasn't identified any yet. Let's stay motion. Why won't you give it? What's the problem with giving? They think, and maybe you're right, maybe we have to find some specific thing that authorizes it. But why won't you just give, why won't you just make that a requirement so a party that feels like it's subjected to fraud has some protection about that? Why are you resisting that so hard? First, there's no factual predicate for the alleged fraud in this case. What's the harm, sir? It's an additional burden on claimants without any benefit. I think it's useful, one way to answer this is to think about the distinction between extraordinary and ordinary claims, which didn't come up at all before. When we talk about these anti-fraud measures, what we're talking about is measures that the trust uses to vet a very small subset of claims made against it. They don't apply across the board to all claims to a trust. And why do they do that? Because the trust, unlike a litigant, does not have access to normal discovery procedures. These submissions are to let the trust, on its own, without the benefit of discovery, vet a very small subset of the claims it receives. We understand the distinction between uninsured claims in the trust and insured claims outside the trust. But I think, at least as I heard Judge Quattlebaum's question, is where's the harm to the claimants if they sign and effect a release saying, you know, whatever information I've submitted on other claims in the trust can go to the insurance company? What's the burden on them at that point? My colleague, Mr. McClay, can answer that more directly, but they have to submit a lot of additional information in addition to the releases. And another way to answer the question is to ask, why does the trust not do this for, say, 99% of the claims it would receive, the ordinary claims? It only does it for the small subset of extraordinary claims. And that is because it does not have access to discovery. So what the trust is saying is, when you go into the tort system, you have all the normal burdens of discovery, and on top of that you should have these additional special burdens for extraordinary claims. You're seeking money. You're bringing a lawsuit. And you're seeking, you know, and you're entitled to. I'm not disparaging that at all. And I pressed your opposing counsel that, you know, I think obviously you can get it, you know, seek it in discovery. That's basic information in discovery. On the one hand, I'm like, why is this such a fight when you, in every court in America, you're going to be able to ask the claimant that, and they've got a Rule 11 obligation to provide it. That's kind of your answer. But the flip side is also the case. It's basic stuff, and these are claimants, and it seems like if you're fighting it so hard, there must be a reason. Or maybe it's not you. Maybe it's the claimant's counsel. But this is kind of remarkable that we're all, we've been in, you've had a bankruptcy case, you've had a district court case, you've had a Fourth Circuit case, you've had a Supreme Court case, and now you're back here about basic information that helps you evaluate a claim. I just find this astonishing that we're all here about whether you get information that seems so basic. And the information the truck is seeking is information that the lower courts held there was no factual basis for needing in this case. I thought you're not clear why. Did the lower courts say it was speculative? The evidence was speculative. It was not direct. It depended on assumptions. They had an expert or two that they based that argument on. Neither of their experts looked at any Kaiser claim file, and even after the 205 claims Mr. Cassata talked about, truck's expert admitted he had no idea whether truck, whether Kaiser, had made any payment on any of those 205 claims. And the bankruptcy judge and the district judge both rejected that as speculative. Correct. Including because it wasn't actually direct evidence of Kaiser claim files and Kaiser payments or not. What's our standard of review? It's clear error. And I'd like to... For those issues. It's clear error. All of the good faith questions... They have to be arguing that the district court, the bankruptcy court, I guess if I'm not really focused on the district court, committed clear error. They have to show the district court committed clear error in agreeing with the bankruptcy court based on factual questions about the need for this in the tort system. And Judge Qualbaum, I think one way to think about it is why not, why don't you just issue an interrogatory? They do, but... Were you exposed and have you submitted other claims? And that's only insufficient if you assume there's perjury. Correct. And I understand the point, but the flip side is, you know, if it's that, you know, not much of a non-issue, you know, why won't you just have claimants give it? I mean, if it's so basic, I just think that cuts both ways. I think they can argue what they're arguing. You know, you're saying, well, you can get it. But if it's such a non-issue, just, you know, all you've got to do is get a form, fill it out, and have a release. And then if you're not cheating someone, you don't have anything to worry about. I see my time's up, which I should have mentioned earlier. If I could answer that. About everybody's time's up. You just run over this presiding judge. That's what you do. I think it's useful to keep. You're taking advantage of me. You can answer questions as long as you get them. That's the rule that I go by. Judge Bottlebaum, Judge Azariah, I ask you questions. You answer them best you can. Working on it. When we run down and the red light's on, you'll be able to sit down. It might be useful to step back and realize there's two different ways of resolving a claim against the debtor in bankruptcy. You can resolve it in the bankruptcy, or you can resolve it outside of the bankruptcy. If you want to resolve it outside the bankruptcy, one common way to do that is to ask the bankruptcy court to lift the automatic stay, as is done here. In that situation, you go into, say here, the tort system. I've never heard of a situation in which a bankruptcy court said, yes, I will lift the automatic stay, and you can go into tort litigation. But here are ten other things you have to do before you can do that, which essentially takes the two systems and mashes them together, here, solely for the benefit of trucks. That's very true. I've seen that many times. In a normal case, you get the stay lifted because the financial liability is the insurance policy, and you kind of go on your ways. But that's not usually, but in 524G cases, that's not necessarily, that's what may differentiate those cases. I'm just using that as an analogy to explain why. That's a pretty important difference. Well, there's never been a 524G case in which these things were mashed together, and the benefits of 524G and a trust and the channeling injunction were given to an insurer that did not contribute to the trust, and when the claims are going to be resolved in a pass-through system, and pass-throughs have happened before. As a further example of the distinction, I would point to the government's objections, which Mr. Casasa referred to, but inaccurately. Most specifically, in this case below, when the government objected, it objected to the ways in which the trust was operating. It didn't object to the pass-through aspect of the litigation. When you say the government, is that the bankruptcy, the U.S. trustee, or the Justice Department, or who is that? In this case, it was the Justice Department, because there isn't a U.S. trustee for that district. Okay. But the point is, at the time that the government objected to the trust for the lack of these measures for extraordinary claims, the pass-through aspect of the plan already existed, and the government did not object to that. I don't think the government's view is binding here, or even should be deferred to. But the fact that that's the best thing my colleague has, is an example that actually supports us, is indicative of how extraordinary the injunctive power is that they want to use in this situation. You made an interesting comment that there's no trustee here. That's been declared unconstitutional, right? Only with respect to the way the fees operate. I'd also point, if we're going to talk about the government, in Marymount and SEPCO, in those situations, the plan was amended pre-confirmation, which is not what we have here. They were post-confirmation and substantial confirmation. And, again, those additions were only for extraordinary claims submitted to the trust. None of them involved an attempt to impose additional burdens on normal tort litigation. And, Judge King, I see no more questions. So, I will... Thank you very much, Mr. Martin. Thank you, Your Honor. We appreciate it. Appreciate you. Good to have you with us. Mr. McClary. Thank you, Judge King and honorable members of the panel. Before I get into some more of the substantive points, I would just like to address what I believe to be a potential error of law. Who is your client here? I'm sorry. I represent the official committee of asbestos personal independence. Your Honor, you were told... Your Honors, you were told that if you were to rule that the plan has violated the good faith provision of 1129A3, it could just go back and be tweaked. And that's just not accurate as a matter of fundamental bankruptcy law. Under Section 1127B, the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan. And what substantial consummation means in the bankruptcy code, to simplify it, is the money has been sent over to a trust or to the creditors. And that's happened here. The money has all gone to the trust from the debtors in terms of the $49 million and the $1 million note payment. And so, as various circuit courts have recognized, a plan cannot be modified for any reason after substantial consummation under 11 U.S.C. 27B. That's the Aerodrome Communications case from the 7th Circuit, 2008. How do we modify substantial payment? I mean, in a case here where you have future claimants. I mean, you pay the... I think I understand your argument to be, you know, we've gone too far here. You know, the plan's been confirmed, things have gone forward, claimants have been paid. You know, if we were to say it's in bad faith, you know, we couldn't put the toothpaste back in the tube, for lack of a better word. But we would be starting over. Well, but your argument, it sounds like, for saying that, is 1127B and the substantial compliance issue. And I guess my question is, you know, in deciding whether there's been substantial compliance, it sounds like you're thinking about the claims that have been handled to date. But I think there's a bunch of claims that are out there, and correct me if I'm wrong here, that may not have been filed or may not have been consummated. So substantial performance may not be so substantial if you consider the whole bucket of potential claims. Right. If I could read from the statute, Your Honor. Under section 11 U.S.C. 1101 sub 2, substantial consummation means transfer of all or substantially all of the property proposed by the plan to be transferred. That's to the trust. That's what that section is talking about. And that's happened. So if that's the case, there was substantial compliance unleashed immediately. No, I don't know. Only after the effective date, Your Honor. You just said it's when they transferred the assets to the trust. Right, but that doesn't happen until the effective date. And that was after the effective date. That was after the confirmation by a number of months, yes. Okay, so does that mean, I mean... Does that effectively cut off their appeal rights? Yeah. No, it doesn't. It doesn't cut off their appeal rights. What it does mean, though... What was the effective date? Oh, the exact day of the effective date? Yeah. That's the date. It would be... Let me think for a second. I believe it was... I want to say it was sometime in 2021 in the later part of the year. So it was after the confirmation. And I defined the fact for issue just past the midpoint of 2021. It would have been, I believe, towards the end of 2021. But to Judge Agee's question, if you're... I mean, you can disagree with them, but trucks sought to protect their rights throughout this process, and they appealed and objected whenever they could. And it sounds like you're saying because that was approved and, you know, the time has gone by while they've been seeking to protect their rights, that now they are kind of out of luck because they can't go back and effectuate. That's not what I'm attempting to suggest, Your Honor, although there is an argument as to that under equitable mootness. But what I'm talking about... Did the truck try to change the effective date? They did not. They didn't make any motions or anything to change the date? No, they sought... They did seek the stay of the confirmation, which you could argue would have had that effect. But they didn't do anything particular with respect to that date. They didn't say they wanted a statement of appeal or anything like that? They did, and they didn't get one. They asked for a statement of appeal and it was denied. That's correct. Okay. But my point is that... Let me ask the question this way. I think this is part of what Judge Quattlebaum is asking. So, here we are four years past the effective date, and your argument is there's substantial compliance under another provision of the Bankruptcy Code. If we were to determine that truck were to prevail here, and your view of substantial compliance is correct, what happens? Well, we start over, and let me explain what I mean by that. There's no plan in front of you for truck. The only plan that truck ever presented was rejected by the Bankruptcy Court as being proposed in that case. And so, we don't really know exactly what would happen in terms of what truck would say they need on remand. That's not in front of you. We don't have a specific language-based proposal. But what we do... Well, why don't we just assume, again, this is a bunch of assumptions, that we agree with truck, we remand it, and as I understand what they've said, they'll basically forget about their 524G objections if you put these anti-fraud provisions in the plan. And that's what comes up. What happens in the District Court or the Bankruptcy Court? Presumably, Your Honor, an extensive negotiation period to see if a plan could be agreed to that would be confirmable and would get the support of the requisite constituencies. But I would note that as a factual matter, and I think it's important from my perspective to focus on the fact that 1129A3's good-faith standard is a factual determination, the courts below it, J1587, found that the relief that truck sought was burdensome and unprecedented. And I would also note that the fact that... Why is it burdensome? Explain to me why it's burdensome for claimants to say, as I understand the information is just, well, who have you worked for? Have you made any other claims? And can I get a... Will you agree to a release from parties so they can confirm you're telling the truth? Well, I think it's slightly more than that, Your Honor. It is both certifications. It is authorizations. It is a whole pile of potential discovery information, which may not even be relevant under the state law. But it's clearly relevant if you're seeking money from Kaiser through its insurer, whether your client worked for or was exposed to asbestos in other circumstances and whether they've made claims against... I mean, there's no argument. If you got up in front of any state court judge and said, yeah, I want... My client's got asbestosis. I'm making a claim. Kaiser caused it. And they said, well, okay, can you give us other exposures you've had to it so we can examine causation? And you said, whoa, whoa, whoa, that's burdensome. You'd get laughed out of court. Your Honor, some states, like West Virginia, have statutory provisions that require certain trust submissions made to bankruptcy trusts to be provided early in the case. Other states have considered that requirement and have rejected it. That's essentially a legislative determination that we're not talking about. It's one that the lower courts found to be burdensome. And I would note one of the things... Have you ever... Can you give me an example of a state court judge who ever said, I'm going to deny discovery into the type of information I just asked about? I cannot. And I can't imagine it ever happening. But I would note that that would be trust burden to show that... In other words, if TRUC hasn't created a factual predicate for showing that this plan can't be confirmed under the good-faith standard, then it shouldn't get its relief. And TRUC didn't have any evidence that it was harmed by this plan. It put TRUC exactly in the same position it was in before, and the lower courts, I think, made a number of factual holdings supporting both the burdensome nature of what TRUC... And that may... The standard view may be a good argument, and Judge King talked about that. I hear that point, and I hear your answer. But, you know, just kind of getting to the nub of the matter, it's just... I don't understand why the claimants wouldn't be willing to provide information that they would almost certainly be required to provide in whatever jurisdiction they are litigating. If I could point out another aspect of what TRUC has requested that we haven't discussed yet here today... Could you answer my question? Just why won't you... Why is that such a concern? I know you've got a legal issue about the court found it's burdensome, you know, clear error, got all that. Maybe that's a winner for you. But why is it burdensome for you to do in bankruptcy court what almost any court in the country would require you to do? Well, Your Honor, I guess I have to take issue with your predicate, because I believe that one of the things that TRUC thinks should be required here is an audit provision, where they get to go back to bankruptcy court years after... I'm sorry, you said it was a what kind of provision? An audit provision. Oh, okay. What I was trying to get to, Judge Quattlebaum, a minute ago, was the fact that it's not just that TRUC wants a whole bunch of information to be provided up front. It's also that they want the freedom to go back to the bankruptcy court and serve an oversight role of the state court system years later and say that a claimant didn't provide information as part of their initial disclosure that they say was relevant to their state court action. And therefore, they can seek something in the nature of clawing back those state court judgments or settlements in the nature of sanctions. That's part of what TRUC has said they want. I don't know about that. I mean, that may be what they would do with the information. I think if your client, not yours, I don't know, but if a client has made misrepresentations in some other proceedings and that's discovered, they'd have to bear the consequences of that. All they're, it seems to me, trying to do is say, in cases where they're defending them, they want basic information on causation that is standard discovery anywhere. And it sure seems like you're fighting it real hard. Well, Your Honor, remember that a lot of plaintiffs have a number of different defendants out there. And sometimes their claim against TRUC will be large. And therefore, worthy of more investment of resources. And sometimes their claim against TRUC may be smaller because they have a number of other defendants too, which is usually the case. Let's just stop right there. Are you saying it's common for claimants to have separate claims and separate proceedings against multiple defendants? No, Your Honor. What I'm saying is it's common for plaintiffs to have claims against multiple defendants in one case? In one case, correct. Right. Right. And so, if TRUC were successful in engrafting onto the state court system something that no court has ever ruled as necessary in any other case that adds additional costs and burdens, that would be suppressing TRUC from being named via the debtors in name only in some of those cases. So you're saying you, because they're one of many claims, you don't... I mean, they get... I got you. But you want to sue them and you want to get money from them and you seem to be saying... Anyway, I just... I guess the point, Your Honor, is they've never sought this kind of information that you're talking about. And this is in the factual record below. Ever. They've never subpoenaed a trust in the court system. We've got that in deposition of the 30B-6. They couldn't identify any false or fraudulent claims ever brought against them. Ultimately, there's a factual, incredibly important component to what 11-29-83 is all about, and they don't have... I don't want to belabor this because you're obviously well over your time, but we are asking questions. Opposing counsel said that their expert had examined a couple hundred cases with indicia of fraud. Are those claims that are in this case No, and here's why. Their own expert called his conclusions, I'm talking about Dr. Bates, an approximation. And the reason he called his analysis an approximation was he didn't... he wasn't given access by truck to the Kaiser-Gibson claim files. So he didn't know if there was any failure of alternative exposure evidence provided to Kaiser-Gibson because he didn't look at a single Kaiser-Gibson file. He was looking at 10-year-old data from the Garlock case. So there were some people that showed up in both cases, but there isn't a shred of evidence below that a single person in this case in Kaiser ever failed to disclose anything. And the expert admitted that, and it's in the record and it's part of the reason why the lower court said and found this evidence unpersuasive and rejected it. The record is very clear evidentially that there's no basis for what the truck wants. Even their expert could only approximate or only chose to approximate because he wasn't given access by his own client to the relevant information. And this is all part of the record. That's why, for example, in the vacancy court's oral ruling, he said the evidence that truck presents with the potential of fraud in this case is not particularly strong. There's a lot of conjecture and assumption and just assuming that everybody is in cahoots and it speculates at the future events. And then the findings of fact in the district court. Truck's argument also hints on speculation at the future events. So this is what would happen in state courts that are unsupported. You know, truck couldn't identify a single false claim, didn't defend how it defended claims in the tort system after Garlock, never subpoenaed discovery from the asbestos trust in the tort system or during the bankruptcy, performed no analysis specific to the debtors whatsoever, and admitted that they could seek whatever discovery they wanted in the tort system. And I'll note something about a pass-through plan that I think is worthy of Your Honor's consideration that many asbestos cases have pass-through tort claims to the tort system to pursue insurance. Federal Mogul, API, Burns and Row, Plant, Duragine and Thorpe. And in none of those cases were any provisions like this required of those people. And I will also note that the phrase anti-fraud provision gets thrown around a lot but that's not really what they're primarily talking about. When you have exposure to only one defendant, the trusts say that if you provide proof of that, if you can show that you only have exposure to one defendant, you get paid more. It's not an anti-fraud provision, it's a proof provision that you don't get paid extra money unless you can prove that. And truck, as the person who controls the settlements in the tort system, can insist on whatever they want before they settle a case. Just like the trust, they can say we want extra proof before we're going to pay you extra money. The truck controls its own settlements. Most of these cases, of course, ultimately settle and truck can demand whatever it wants in the tort system as a condition of settlement. It's not harmed at all by anything in this plan and certainly hasn't met its evidentiary burden of showing that it was proposed in bad faith. And as I mentioned a minute ago, Your Honors, what truck really wants to do is to engraft onto the state system something that they don't require because they don't think it's necessary. And those that think it's necessary to some extent, like West Virginia, have done it. They've put it into their statutes and their court rules that it's required. But as the Supreme Court recognized in the Johnson v. Fankel case, respect for federalism is at its apex when we confront the claim that federal law requires the state to undertake something that's fundamental as restructuring the operation of its courts. That's what truck is asking you to do and we believe it's deeply inappropriate as well as running contracts and purposes of the Banksy Code. We have been here for eight and a half years, Your Honors. It took five years of negotiations to craft this plan. The claimant had to give up punitive damages, which I can assure you is a significant give and a lot of value that was given up by these plaintiffs to reach this ultimately consensual deal after five years. There's no legal basis to require that this plan be thrown out and we start over. And one final point I would like to make, Your Honors, is that Section 28 U.S.C. 1411A says that Title XI does not affect any right       that an individual has under applicable non-banksy law with respect to a personal injury or wrongful death claim. Now it suggests,  that for Trump to successfully argue, if it were, that nobody could go back to the state court system and pursue a claim absent their crafted procedures, which no state has ever viewed as necessary or appropriate, would be cutting off those claimants' rights to a jury trial under 28 U.S.C. 1411A and would be, therefore, illegal. But I'm here to answer any more questions that you, Your Honors, may have. Thank you very much, sir. Good to have you with us. Thank you. Mr. Herron? Good morning, Judge King, Judge Agee, Judge Qualbaum. My name is May Police of Court. My name is Ed Herron. I'm the future claimant's representative in this case. A future claimant's representative is a requirement in 524G to safeguard the interests of folks exposed many years ago to cottage asbestos but who are not yet sick. I was appointed by the bankruptcy court. I'd like to try to answer Your Honors' questions about what's the harm. At base, claimants and truck are civil litigants. I wouldn't advise my clients who are in civil litigation and I'm a bankruptcy lawyer, not a tuit lawyer, to give up procedural rights they may have in state court litigation. And I certainly wouldn't ask them to do it gratuitously.  the briefing is clear. Truck's in exactly the same position it was pre-bankruptcy. Whatever rights it has in cooperation still exist. Can you articulate any burden that hadn't been articulated by any of your colleagues? Well, one, the issue of disclosures is actually very nuanced. Um, these are exposures that occurred 50 years ago. Just tell me the burden. The burden is inaccuracy among other things. That's why we'd like our constituents to have the rights in the civil justice system to go through the discovery process.  they shouldn't have to concede or whatever rights they may have in order to take part in this bankruptcy. So, the burden is there's a risk of inaccuracies. There's a risk they say something in bankruptcy that's inconsistent with what they say in the tort system. Is that the burden you're saying exists? That they'd be truthful? No, that's not the burden I'm saying exists. I'm saying that the passage there's many ways to establish asbestos exposure and it's not entirely based on the claimant's memory. And those ways are equally available to truck as they are to the claimant. Um,  that's the burden. The truck has no entitlement to this discovery. They have no entitlement to a benefit from this bankruptcy. In our view, this entire argument is pretextual. They haven't established fraud and it's inaccurate to say that this plan is different than the SEPCO and Merrimont plans on which they rely. The disclosure provisions in this plan are the same as they are in Merrimont and SEPCO. They only apply to extraordinary claims. Merrimont and SEPCO also have, they preserve for the claimant the right to go into the tort system and in that instance none of those trusts require these disclosures. Your Honor, in discovery we determined that truck never sought discovery from trusts prior to this bankruptcy. Your Honor, you've established today that in the hundreds of cases that have been litigated with truck post-bankruptcy they haven't sought discovery from trusts. This is entirely pretextual. If we were to make this concession in favor of truck, it's our view they come up with other reasons to oppose the plan. They negotiated a policy that has no aggregate limits. What they want in my opinion is a buyout. They want a lump sum settlement and they will come up with pretextual arguments to oppose this plan until we concede to them. They're trying to fix a problem that doesn't exist. They never established fraud. They're arguing that our plan is different from these other plans when it is not. And they're seeking a benefit which the bankruptcy code under 524E, 524G, and their own insurance policy which says their obligations to insure claims remain notwithstanding the bankruptcy of their insured. All these provisions require truck to defend in the tort system. They're not entitled to a benefit and our clients shouldn't have to give up rights they could otherwise exercise in the civil justice system in order to avail themselves of the 524G plan process. We've already made a concession. We've given up punitive damages in order for the security of the funding of the trust. Truck has made no concessions. Unless your Honor has any questions, I see my time is up. Thank you very much,  We appreciate your help. Thank you, Your Honor. A few brief points on rebuttal. First, as to the court's authority to provide a channeling injunction that has the condition that truck speaks here, section 524G 4A II Romanets and then big II expressly says that the channeling injunction can be extended to protect the third party based on the third party's provision of insurance to the debtor. That is exactly the position that the   And the rights to the proceeds from truck's insurance policies have been assigned to the trust. As for authority to modify the  524G 6 says that the injunction can be modified on appeal from a confirmation order based on a directive from a court of  Also, this court's precedence in land and  suggests that a remedy can be ordered for forward-going relief which again is all that truck speaks here. As to the effective date of the plan,  confirmed plan allowed the effective date to be set after a final order. It defined the final order to be a non-appealable entry of confirmation order. So the debtor had the right to wait out the appeal here. And they unilaterally waived that in order to have the plan go  On the evidentiary record, our expert reviewed 800 cases that Kaiser had paid prior to this filing and found that the claimants who resolved with Kaiser before filing trust claims got recoveries that were on average 60% higher than those who resolved with Kaiser after they had filed trust claims. So there's at least a strong inference there that the timing of when they're submitting trust claims is affecting the scope of their recovery. I'm sure counsel, Judge King asked the question, maybe it was when you were up first or maybe it was one of your colleagues emphasizing the evidence was not sufficiently persuasive, pointed out some parts of it that weren't conclusive enough. And you can disagree with that, but how is that clear error? Well, two points there. First, clear error does not apply when the district court's conclusion is based on a mistaken impression of law. And here we believe that took place because the district court misunderstood its obligation toward bankruptcy claims. That is to your point that it said it didn't have authority to  what happens in that issue. But it also said that your claims of fraud were not sufficiently supported, indeed were speculative, and that's a  determination, it seems to me. And you obviously disagree with that, or you wouldn't be here, but why is that clear error? We do disagree with it. The expert evidence we discussed here was unrebutted in the district court. But unrebutted doesn't mean there are not holes in it. You can have an expert, there's not a competing expert, but a fact finder could find it's not persuasive. But if that were the case,  Honor, why would the plan provide the same fraud prevention measures we seek for uninsured claims? Because it thinks you can get the same information in state court and says you haven't provided enough information to make me think that's not possible. That's not   Honor said, we're not seeking to alter state court discovery rules. Yes, all of those provide for a state court trial as a final fallback, but that is after the claimant has come to the   with fraud prevention measures and rejected the settlement offer. If there are no further questions, thank you. Thank you. Good to have you with us. We appreciate counsels helping us out today. Good to have all of you here. Before we call the next case, I'm going to take a short break. We'll take a brief recess.
judges: Robert B. King, G. Steven Agee, A. Marvin Quattlebaum Jr.